UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Burton Boone, III, and
Diamond Boone,
    Plaintiffs

   v.                                 Case No. 25-cv-0175-SM-AJ
                                    Opinion No. 2025 DNH 142
Six Unit, LLC, Michael Lizotte,
Erica Lizotte, and James & Stolt,
LLC, d/b/a Summit Real Estate,
    Defendants

**O R D E R**

Pro se plaintiffs, Burton Boone, III, and Diamond Boone, filed suit against defendants Six Unit, LLC, Michael Lizotte, Erica Lizotte, and James & Stolt, LLC d/b/a Summit Real Estate ("Summit"), asserting claims for fraud stemming from a real estate transaction between the parties. Six Unit and Michael Lizotte (the "Six Unit Defendants") moved to dismiss the complaint for lack of personal jurisdiction, and on forum non conveniens grounds. Summit and Erica Lizotte (the "Summit Defendants") moved to dismiss for lack of personal jurisdiction, and for lack of subject matter jurisdiction as well. Burton Boone objected to both motions.[1]

---

[1] Burton Boone filed his objection on behalf of Diamond Boone as well. But as defendants correctly point out, because Burton

Defendants' motions to dismiss for lack of personal jurisdiction are granted.[2]

### **Standard of Review**

<u>Federal Rule 12(b)(2)</u>. "It is well-settled that the burden of proving that personal jurisdiction may be exercised in the forum state rests with the party seeking to invoke that jurisdiction." <u>Rosenthal v. Bloomingdales.com, LLC</u>, 101 F.4th 90, 94 (1st Cir. 2024) (citing <u>Motus, LLC v. CarData Consultants, Inc.</u>, 23 F.4th 115, 121 (1st Cir. 2022)). When, as here, the jurisdictional determination is made "at the inception of the litigation — without the benefit of either pretrial discovery or an evidentiary hearing — the classic prima facie approach applies."

---

Boone is a pro se litigant, he may not represent anyone but himself. <u>See</u> 28 U.S.C. § 1654; Local Rule 83.6(b)).

Presumably relying on Local Rule 7.1(b), defendants urge the court to find that Diamond Boone has waived any objection to their motion because she has failed to respond to their motions to dismiss. Local Rule 7.1(b) does allow the court to deem a nonmovant's failure to object a waiver of any objection (assuming the dismissal would not offend equity and the local rule does not conflict with any provision of the Federal Rules of Civil Procedure). <u>NEPSK, Inc. v. Town of Houlton</u>, 283 F.3d 1, 7 (1st Cir. 2002). But, the court declines to apply the local rule here, since dismissing Diamond Boone's claim on the merits (and with prejudice) would not serve the interests of justice.

[2]    Because the court determines it lacks personal jurisdiction over the defendants, defendants' motions to dismiss for lack of subject matter jurisdiction and on grounds of <u>forum non conveniens</u> are denied as moot.

2

Id. (citations omitted).  Under that approach, "an inquiring court must ask whether the plaintiff has proffered evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction."  Id. (quoting Kuan Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir. 2020)) (further quotations omitted) (cleaned up).

Thus, a plaintiff's demonstration of personal jurisdiction must be based on specific facts set forth in the record in order to defeat a defendant's motion to dismiss.  See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).  See also Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 8 (1st Cir. 2002) ("Although the burden of proof is light, [the plaintiff] may not rely on the mere allegations of its complaint, but must point to specific facts in the record that support those allegations.").  And, "in reviewing the record before it, a court 'may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment.'"  VDI Technologies v. Price, 781 F. Supp. 85, 87 (D.N.H. 1991) (quoting Lex Computer & Management Corp. v. Eslinger & Pelton, P.C., 676 F. Supp. 399, 402 (D.N.H. 1987)).

   Federal Rule 12(b)(1).  Similarly, in the context of a motion to dismiss pursuant to Federal Rule of Civil Procedure

3

12(b)(1), a plaintiff bears the burden of establishing the existence of subject matter jurisdiction.  See Calderon-Serra v. Wilmington Trust Co., 715 F.3d 14, 17 (1st Cir. 2013).  When, as here, the material jurisdictional facts are not disputed, the court "credit[s] the plaintiff's well-pled factual allegations and draw[s] all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010) (citations omitted).  The court may also "consider whatever evidence has been submitted, such as the depositions and exhibits submitted."  Id. (quoting Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996)).

## Background

Self-represented plaintiffs Burton and Diamond Boone are New Hampshire residents, living at 12 Patricia Street in Windham, New Hampshire.  Six Unit, LLC is a Maine limited liability company located at 149 Baker Road, in Freeport, Maine. Defendant Michael Lizotte is the sole member of Six Unit.  He resides at 149 Baker Road, in Freeport, Maine, along with his wife, defendant Erica Lizotte.  James & Stolt, LLC d/b/a Summit Real Estate ("Summit") is a real estate brokerage company, located in Maine, with its principal place of business at 227 Water Street, in Augusta, Maine.  Erica Lizotte is a real estate agent licensed in the State of Maine, and employed by Summit.

4

Plaintiffs' claim for fraud arises out of the sale of a 16-unit multi-family residential property owned by Six Unit, LLC, located at 69 Lincoln Street, in Lewistown, Maine (the "Property"). Over the past year or so, the Property has been plagued by recurring infestations of bedbugs. In the summer of 2024, Six Unit engaged a pest control company to remediate the problem. Unfortunately, those efforts were unsuccessful. Bedbug infestations at the Property persisted.

In February, 2025, Six Unit listed the Property for sale on the Multiple Listing Network ("MLS") for the amount of $1,650,000, and engaged Summit to act as broker for the sale. The MLS listing was posted by Summit, and identified Erica Lizotte as agent for the seller. The listing did not disclose the relationship between Erica Lizotte and Six Unit or James Lizotte. The MLS listing also did not disclose the Property's recurring bedbug infestations in the attached "Property Disclosure" (which requires identification of any known defects that relate to insect infestation).

The Boones were interested in purchasing a residential rental property. After they determined that Maine multi-unit properties offered a higher return on investment than returns on comparable New Hampshire properties, plaintiffs focused their search on properties in Maine. After reviewing and relying on

5

the disclosures in the MLS listing and its attachments, the Boones determined that the Property met their requirements. Accordingly, the Boones entered into a buyers' agreement with Four Points Real Estate, in Maine, with Garret Getch and his wife, Carrie Getch, acting as their agents.  On February 13, 2025, with Garret Getch's assistance, the Boones submitted an offer (in the form of a Purchase and Sale Agreement ("PSA")) to purchase the Property for $1,700,000.  The MLS listing and Property Disclosure were appended to the PSA, and incorporated into its terms.

After receiving plaintiffs' offer, Erica Lizotte reached out to Garret Getch, suggesting modifications to the PSA.  After the Boones agreed to those proposed changes, they electronically initialed the modifications to the PSA and emailed the revised document back to Garret Getch, who forwarded the document to Erica Lizotte for execution by Six Unit.  After Six Unit executed the PSA, Erica Lizotte emailed a signed copy of the PSA and Property Disclosure to Getch, who forwarded it on to the Boones.  Pursuant to the executed PSA, the Boones agreed to purchase the Property for the amount of $1,675,000, with a $30,000 deposit down.

On February 15, 2025, Garret Getch attended a walkthrough of the Property on the Boones' behalf.  After the walkthrough,

6

Getch requested that Six Unit provide plaintiffs with Schedule "E" to its 2023 tax return. Upon reviewing that document, the Boones learned that the Property's 2023 maintenance expenses (as reported in the 2023 Schedule) were over twice the amount reported in the MLS listing.

On February 27, 2025, Burton Boone and Getch attended a walkthrough of the Property. This time, they were accompanied by the Property's manager. During the walkthrough, the Property Manager informed Burton and Getch that the Property was infested with bedbugs. After hearing that news, Getch and Burton requested that Six Unit provide them with invoices associated with remediation of the bedbug infestation.

In response to plaintiffs' concerns, Erica Lizotte assured Getch that the Property's bedbug issue had been resolved (or would soon be resolved), and should not affect the Property's sale. Separately, however, the Property Manager reported to Getch and Burton Boone that one of the Property's tenants had very recently been bitten by bedbugs.

Plaintiffs subsequently discovered other misrepresentations concerning the Property set forth in the MLS listing and in the Property Disclosure. For example, the listing misrepresented the number of units in the Property that were occupied. It also failed to properly disclose the presence of lead paint on the

7

Property.  Plaintiffs also discovered that, contrary to disclosure requirements applicable to Maine real estate brokers and agents, Erica Lizotte had not disclosed her relationship with Michael Lizotte (again, the sole member of Six Unit, LLC).

This suit followed.  Plaintiffs "seek monetary and equitable relief, including specific performance of the sale of the Property as if the recurring infestation of bedbugs did not exist, as equitable relief and as compensation for the damages they have suffered as a result of the fraudulent representations by Defendant to purchase the property at an artificially high price."  Compl. at p. 7.

## Discussion

Because it is dispositive, the court addresses first defendants' motions to dismiss for lack of personal jurisdiction.[3]

---

[3]   As the Supreme Court explained in Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584–85, (1999):

> "[A] court that dismisses on ... non-merits grounds such as ... personal jurisdiction, before finding subject-matter jurisdiction, makes no assumption of law-declaring power that violates the separation of powers principles underlying Mansfield [v. Swan, 111 U.S. 379 (1884)] and Steel Company [v. Citizens for Better Environment, 523 U.S. 83 (1998)]." In re Papandreou, 139 F.3d 247, 255 (D.C. Cir. 1998).

8

### I.   Personal Jurisdiction

"It is common ground that a court is without authority to adjudicate a transitory cause of action if it lacks personal jurisdiction over the defendant." Carreras v. PMG Collins, LLC, 660 F.3d 549, 552 (1st Cir. 2011) (citations omitted). "Personal jurisdiction comes in two distinct analytic strains: general and specific." Id. (citations omitted). Boone contends that the court may exercise "specific" personal jurisdiction over the defendants. See generally Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (noting that "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.") (citation and internal punctuation omitted). Specific jurisdiction "exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." Mass. Sch. of L. at Andover, Inc. v. Am. Bar Assn., 142 F.3d 26, 34 (1st Cir. 1998).

The court may exercise specific jurisdiction over a defendant "if doing so comports with both the forum's long-arm statute and the Due Process Clause of the United States Constitution." Carreras, 660 F.3d at 552 (citations omitted).

Because New Hampshire's long-arm statute permits personal jurisdiction over an out-of-state defendant to the extent allowed by due process, the court may "march directly to the constitutional inquiry." Rodríguez-Rivera v. Allscripts Healthcare Solutions, Inc., 43 F.4th 150, 160 (1st Cir. 2022). That inquiry, which is focused on whether the parties' dispute "is adequately related to a significant set of contacts between the defendant and the forum," comprises three requirements. Carreras, 660 F.3d 549 at 554 (1st Cir. 2011) (citations omitted). Boone must show that:

> (1) [plaintiffs'] claim directly arises out of or relates to the defendant's forum-state activities; (2) the defendant's contacts with the forum state represent a purposeful availment of the privilege of conducting activities in that state, thus invoking the benefits and protections of that state's laws and rendering the defendant's involuntary presence in that state's courts foreseeable; and (3) the exercise of jurisdiction is ultimately reasonable. Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction.

Scottsdale Cap. Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018) (citations omitted). See also Cambridge Literary Props. v. W. Goebel Porzellanfabrik, 295 F.3d 59, 63 (1st Cir. 2002); Sawtelle v. Farrell, 70 F.3d 1381, 1389-95 (1st Cir. 1995) (describing the three essential jurisdictional elements as "relatedness," "purposeful availment," and the so-called "Gestalt factors").

**A.   Relatedness**

The first of those elements – "relatedness" – requires that the plaintiff "show a demonstrable nexus between its claims and the defendant's forum-based activities, such that the litigation itself is founded directly on those activities." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 66 (1st Cir. 2014) (citation and internal punctuation omitted).  With regard to that prong of the jurisdictional inquiry, the court employs a slightly different analysis depending on the nature of the claim advanced – that is, whether it sounds in tort or contract. When, as here, the asserted claim sounds in tort, "we customarily look to whether the plaintiff has established 'cause in fact (i.e., the injury would not have occurred "but for" the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action).'" Mass. Sch. of L., 142 F.3d at 35 (quoting United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)).

In support of their motion, defendants argue that the Boones' claim is unrelated to defendants' purported forum-state activity, which consists of their placement of the Property's listing on the MLS national website, and Erica Lizotte's February 13 email transmission of the executed PSA and Property

11

Disclosure to Getch (knowing that Getch would forward the disclosure to the Boones in New Hampshire).  Boone disagrees.  He argues that, through those communications, defendants knowingly and deliberately communicated false statements into the state of New Hampshire, with the intent that the plaintiffs rely upon those statements, and which resulted in injury to the plaintiffs.

To be sure, the "transmission of information into New Hampshire by way of telephone or mail is unquestionably a contact for purposes of [the jurisdictional] analysis." Sawtelle, 70 F.3d at 1389-90.  And, our court of appeals has stated, "where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state." Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 983 (1st Cir. 1986) (quoting Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972)).

The problem with that argument, however, is that Erica Lizotte was emailing an executed PSA and Property Disclosure to the plaintiffs (via Getch).  By that point in time, plaintiffs had already agreed to purchase the Property in reliance on the Property Disclosure attached to the MLS listing, and in reliance on the MLS listing itself.  Boone concedes that fact.  See Pl.

12

Obj. to Stolt Mot. to Dismiss (document 20) at 4 ("Based on Burton Boone's intent to provide housing for veterans, and based on the Property Disclosure accompanying its MLS listing – especially the disclosure as to the 'clean' condition of the Property, the Property was presented in a light that appeared to readily meet his criteria."). In other words, the basis for plaintiffs' fraud claim is defendants' misrepresentations as set forth in the MLS (and in documents attached to the MLS listing). So, Erica Lizotte's February 13 email attaching the executed PSA was not the "cause in fact" of plaintiffs' injuries since they have not (and likely cannot) allege that they reasonably relied (or relied at all) on the documents attached to Erica's February 13 email when they decided to purchase the Property.

Turning then to the documents upon which plaintiffs allegedly did detrimentally rely: the MLS listing and its attached Property Disclosure. It is unlikely that the listing of the Property on the national MLS website, by itself, can be considered a jurisdictional contact. Indeed, our court of appeals has explicitly stated that the "mere availability of a primarily informational website is not enough — by itself — to render a defendant susceptible to jurisdiction in a particular forum." Motus, LLC, 23 F.4th at 125. Boone concedes that point, stating: "the Plaintiffs concede that the Internet

13

solicitation was not directed solely at the state of New Hampshire, but to all the states in the northeast within a reasonable driving distance of the Property in Lewiston, Maine, including the State of New Hampshire." Pl.'s Obj. to Six Unit Mot. to Dismiss (Document 21) at 14. And Boone is correct: posting the Property on the national MLS site which plaintiffs was able to access in New Hampshire does not constitute a significant contact between the defendants and the state of New Hampshire.

"The relatedness requirement is not an open door; it is closely read, and it requires a showing of a material connection." Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 137 (1st Cir. 2006) (quoting Harlow v. Children's Hosp., 432 F.3d 50, 60-61 (1st Cir. 2005)). And, "there can be no requisite nexus between the contacts and the cause of action if no contacts exist." U.S. v. Swiss Am. Bank, Ltd., 274 F.3d 610, 621 (1st Cir. 2011) (citations omitted). Because plaintiffs have not satisfied the relatedness prong of the jurisdictional test, Boone's argument for specific personal jurisdiction fails. However, even if plaintiffs had successfully shown relatedness, they founder on the purposeful availment prong as well.

14

### B. Purposeful Availment

The "purposeful availment" element of the analysis has been described as a "rough quid pro quo" – that is, "when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior." Carreras, 660 F.3d at 555. A federal court's exercise of personal jurisdiction over a foreign defendant "must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." Walden v. Fiore, 571 U.S. 277, 286 (2014). "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." Id. at 290. Consequently, the "proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Id. The cornerstones of the purposeful availment inquiry are voluntariness and foreseeability. C.W. Downer, 771 F.3d at 66.

Against this background, plaintiffs fall short with respect to foreseeability. The court cannot conclude that defendants ought to have known they were rendering themselves liable to suit in New Hampshire by (1) posting the Property on the

15

national MLS website; and (2) emailing (via the plaintiffs' Maine-based real estate agent) an executed copy of the contract documents back to plaintiffs in New Hampshire.  Any case-specific contacts by defendants (excluding the posting of the Property listing on the MLS website that was accessible anywhere in the world) – "stem from [plaintiffs'] unilateral activity." Kuan Chen, 956 F.3d at 61.

Plaintiffs, after viewing the MLS listing on the national website, reached out to a Maine real estate agent to prepare and submit an offer on the Property on their behalf.  So, it was plaintiffs who made the initial contact, by reaching out to a foreign defendant.  While defendants did know that plaintiffs were located in New Hampshire after receiving their offer on the Property, the Court of Appeals for the First Circuit has held "in a variety of contexts, that the defendant's awareness of the location of the plaintiff is not, on its own, enough to create personal jurisdiction over a defendant." Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir. 2008).

On this point, Phillips v. Prairie Eye Ctr., 530 F.3d at 29, is instructive.  In Phillips, plaintiff argued that, where defendants had sent him an unsigned employment contract that he received in Massachusetts, defendant should have foreseen being haled into court in Massachusetts because plaintiff had accepted

16

the contract in Massachusetts, and because defendants were aware that plaintiff was a Massachusetts resident. The court wrote: "there is little besides awareness here. It stretches too far to say that [defendant], by mailing a contract with full terms to Massachusetts for signature and following up with three e-mails concerning the logistics of signing the contract, should have known it was rendering itself liable to suit in Massachusetts." Id. at 29. The court continued, noting that the defendant in Phillips "did not initiate the contact with plaintiff in Massachusetts; rather it was the other way around." Id.

So too, here. The defendants' limited contacts with New Hampshire are insufficient to establish that they purposefully availed themselves of the privilege of conducting business in the state.

Having determined that plaintiffs are unable to meet the relatedness and purposeful availment requirements of the personal jurisdiction analysis, the court need go no further. Because plaintiffs have not made a sufficient prima facie showing of specific personal jurisdiction over the defendants, defendants' motions to dismiss for lack of personal jurisdiction are necessarily granted.

## Conclusion

Because the court finds that it lacks personal jurisdiction over the defendants, their motions to dismiss for lack of personal jurisdiction (document nos. 7 and 13) are **GRANTED**, to the extent that the case shall be transferred to the District of Maine, where it could have been properly filed.

Pursuant to 28 U.S.C. § 1631, when a federal court "finds there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court ... in which the action or appeal could have been brought at the time when it was filed or noticed." "Congress's use of the phrase 'shall ... transfer' in section 1631 persuasively indicates that transfer, rather than dismissal, is the option of choice." Britell v. United States, 318 F.3d 70, 73 (1st Cir. 2003). Accordingly, this action is transferred to the United States District Court for the District of Maine.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 9, 2025

cc:  Burton Boone, III, pro se
     Diamond Boone, pro se
     Counsel of Record

18